UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL S. POWELL,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICAN PRESIDENT LINES, LTD., a corporation, APL MARITIME, LTD., and STEPHEN L. BERTRAND, and the M/V APL SINGAPORE, its appurtenances, tackle, anchor, et ux,<br><br>    Defendants. | Case No. C08-1606 MJP<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT** |

The above-entitled Court, having received and reviewed

    I.    Defendant Stephen Bertrand's Motion for Summary Judgment (Dkt. No. 47)

    II.    Defendant APL Marine Services, Ltd. and M/V APL Singapore's Motion for Summary Judgment (Dkt. No. 50)

    III.    Response of Plaintiff to Motion for Summary Judgment and Cross Motion for Summary Judgment (Dkt. No. 55)

    IV.    Defendant Stephen Bertrand's Reply in Support of Motion for Summary Judgment and Opposition to Plaintiff's Improper "Cross Motion" (Dkt. No. 57)

    V. Defendant APL Marine Services, Ltd. and M/V APL Singapore's (1) Reply Memo in Support of Their Motion for Summary Judgment and (2) Opposition to Plaintiff's Improper "Cross Motion" (Dkt. No. 58)

and all attached declarations and exhibits, makes the following ruling:

  IT IS ORDERED that Defendant Stephen Bertrand's motion for summary judgment is GRANTED and all claims against him are DISMISSED with prejudice.

  IT IS FURTHER ORDERED that Defendants APL Marine Services, Ltd. and M/V APL Singapore's motion for summary judgment is GRANTED and all claims against them are DISMISSED with prejudice.

  IT IS FURTHER ORDERED that Plaintiff's cross-motion for summary judgment is DENIED.

**Discussion**

  Plaintiff Michael Powell filed this lawsuit in November 2008 alleging claims under the Jones Act and general maritime law. Complaint. (Dkt. No. 1) Plaintiff was employed as a licensed deck officer – the Third Mate – aboard the *APL Singapore*, from October 18, 2007, when he joined the vessel in Oakland, California, until October 30, 2007, when he was discharged from employment by the vessel's Captain/Master, Defendant Stephen Bertrand, at Pusan, Korea. (Powell Depo. 45:11-46:14, Exh. 15.) While on the *APL Singapore*, Plaintiff's employment was governed by the terms of a written collective bargaining agreement between the Company and the International Organization of Masters, Mates & Pilots (MMP), with whom Plaintiff is a union member. (Declaration of Gerald Carbiener ¶ 3, Exhs. 1 and 2; Powell Depo. 25:12-26:20.)

  As early as October 24, 2007, Captain Bertrand raised concerns with the Company about his perception that Plaintiff had failed to follow both the Captain's direct orders to learn the

vessel's bridge equipment and his standing orders related to watch standing. (Bertrand Decl. ¶¶ 3-4, Exh. 1; Carbiener Decl. ¶ 4, Exh. 3.) On October 25, 2007, the Company recommended that Plaintiff be discharged for cause as soon as the problems were formally documented (through written warning). (Bertrand Decl. ¶ 5, Exh. 2; Carbiener Decl. ¶ 5, Exh. 4.) On October 26, 2007, Bertrand agreed to give Plaintiff a written warning and follow up further as, and if, needed. (Bertrand Decl. ¶ 6, Exh. 2; Carbiener Decl. ¶ 6, Exh. 4.) On the night of October 27, 2007, the *APL Singapore* encountered storm conditions, and Plaintiff's actions on his watch that night appeared to Captain Bertrand to be in many respects incompetent and deficient. Captain Bertrand decided at that time to terminate Plaintiff's employment. (Bertrand Decl. ¶ 7; Bertrand Depo. 69:23-71:7, 96:12-23, 104:1-9. )

When the ship arrived in Yokohama, Japan the next day, Bertrand gave Plaintiff two written warnings. The first written warning charged Plaintiff with failing to follow the Captain's direct and standing orders. (Powell Depo. 114:22-116:23, Exh. 14.) When given an opportunity to respond to the charges, Plaintiff's only response was "I have nothing to say." (Powell Depo. 115:20-116:3, Exh. 14.) The second written warning, given immediately after the first, charged Plaintiff with a lack of common seamanship, a failure to observe safe practices and other performance deficiencies on the previous night's watch. (Powell Depo. 118:2-120:5, Exh. 15.) Plaintiff was again given an opportunity to respond to these charges, and stated only "I don't have any reply." (Powell Depo. 119:7-14, Exh. 15.)

On October 28, 2007, Captain Bertrand also informed the Company that he wished to terminate Plaintiff once the vessel arrived in Pusan, Korea. (Bertrand Decl. ¶ 8, Exh. 3; Carbiener Decl. ¶ 7, Exh. 5.) The Company concurred that termination was appropriate. (Bertrand Decl. ¶ 9, Exh. 4; Carbiener Decl. ¶ 8, Exh. 6.)

Plaintiff had previously, in 2000 or 2001, brought an action under the Jones Act, 46 U.S.C. Section 688, against a different employer, Central Gulf Lines, for wrongful discharge, wages due and for a personal injury suffered aboard one of its vessels. Plaintiff received a monetary

settlement of that earlier lawsuit. (Powell Depo. 163:19-171:18, Exh. 22; 174:12-23.) Captain Bertrand testified that he first learned of Plaintiff's prior injury and the previous lawsuit brought by Plaintiff on the morning of October 30, 2009, after he had already decided to terminate Plaintiff's employment. (Bertrand Decl. ¶¶ 10-11, Exh. 5.)

Later in the day on October 30, 2007, Plaintiff was terminated from employment on the *APL Singapore* while the vessel was docked at Pusan, Korea. Plaintiff responded to this news by stating "I think this is harassment," but did not provide any further elaboration. (Powell Depo. 133:9-140:13, Exh. 15.)

Upon his repatriation to the U.S., Plaintiff filed a grievance with his union, the MMP, over his discharge. (Powell Depo. 270:22-274:13.) On November 29, 2007, Don Marcus, the MMP's Vice President–Pacific Ports, advised Plaintiff that the MMP had investigated his discharge grievance and determined "there is inadequate basis to pursue your grievance beyond this point" as "the MMP would be unable to adequately support your position at arbitration." (Powell Depo. 278:14-280:10, Exh. 23.) Plaintiff appealed the decision not to further pursue his grievance to arbitration to the MMP's General Executive Board (GEC). (Powell Depo. 280:11-282:1, Exh. 24.) On December 3, 2007, Glen Banks, International Secretary Treasurer, responded on behalf of the MMP's General Executive Board that he agreed "that the likelihood of success in processing further with your grievance would be a costly endeavor with almost no possibility of success." (Powell Depo. 283:10-285:2, Exh. 25.) Banks did agree to place Plaintiff's grievance on the agenda of the Union's Offshore Advisory Counsel (OAC) for further review and possible action. (Id.) By letter dated December 14, 2007, Banks later advised Plaintiff that, "after considering all the evidence the OAC and GEB have both determined that it is unlikely that the Union could prevail at arbitration and thus, must deny your appeal." As such, "[b]y this letter, you are advised that the Union will not pursue your grievance further and the grievance process has been exhausted." (Powell Depo. 285:8-286:10, Exh. 26.) Approximately eleven months later, Plaintiff filed this lawsuit. (Powell Depo. 289:21-290:6, Exh. 20.)

The Court will examine, in turn, the claims against Defendant Bertrand, the claims against Defendants APL Marine Services and *M/V APL Singapore* (collectively, "APL") and finally Plaintiff's cross-motion for summary judgment.

I. DEFENDANT STEPHEN BERTRAND[1]

The Jones Act, 46 U.S.C. § 688, authorizes seamen to maintain actions for negligence against their employers in the event they are injured in the course of their employment. Defendant Bertrand first attacks Plaintiff's pleadings on the ground that he has not alleged any injury to himself while serving aboard the *M/V APL Singapore*, an argument which will be treated more fully in the following section.

As regards this individual defendant, Plaintiff's complaint and proof suffer from a very specific defect. In order to recover under the Jones Act, an injured party must establish that a defendant was his employer at the time of the injury. Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 787 n. 6 (1949); see also Glynn v. Roy Al Boat Management Corp., 57 F.3d 1495 (9th Cir. 1995). The elements of proof which define a Jones Act employer are identified by the following questions:

1. Whose orders controlled the master and the crew?
2. Whose money paid their wages?
3. Who hired the crew?
4. Whose initiative and judgment chose the route and the ports?

Cosmopolitan, 337 U.S. at 795. It is undisputed under this test that both Defendant Bertrand and Plaintiff were employees of APL and therefore that Defendant Bertrand is immune from judgment as a Jones Act employer.

Similarly, Plaintiff's claims of unseaworthiness (setting aside for the moment the question of their merit) are unrecoverable against Defendant Bertrand. The absolute, non-delegable duty

---

[1] Although Plaintiff continues to make reference in the caption of his pleadings to Defendants "STEPHEN L. BERTRAND and his wife," Laura Bertrand was dismissed from this lawsuit in February 2009. Dkt. No. 24.

**ORDER ON MOTIONS FOR SUMM JMT**

1  to furnish a vessel and appurtenances reasonably fit for their intended use falls to the ship's
2  owner. Mitchell v. Trawler Racer, 362 U.S. 530, 549-50 (1960). Plaintiff has presented no
3  evidence that Defendant Bertrand owned the *M/V APL Singapore* and summary judgment will be
4  granted in Bertrand's favor on the seaworthiness claim.

5  Plaintiff also brings a claim of "wrongful termination" against Defendant Bertrand.
6  Although Plaintiff fails to specify in what way his termination was "wrongful," courts have
7  recognized a Jones Act violation where a seaman was allegedly discharged in retaliation for
8  pressing a Jones Act personal injury claim against that employer. Smith v. Atlas Off-Shore Boat
9  Service, Inc., 653 F.2d 1057 (5th Cir. 1981). Plaintiff did speculate in his deposition that he
10 might have been discharged because he had previously brought a Jones Act claim against a
11 different employer (Central Gulf Lines), a claim which he thought might have come to Defendant
12 Bertrand's attention through the captain of the Central Gulf Lines vessel, a Captain Werse.
13 Powell Depo. 173:20-174:15.

14 The Court has previously ruled on Defendant Bertrand's immunity from Jones Act claims
15 by Plaintiff. The retaliation charge is further undercut by the facts, undisputed by Plaintiff, that
16 (1) Bertrand has never met or heard of Captain Werse (Bertrand Depo. 83:24-84:2) and (2)
17 Bertrand's decision to terminate Plaintiff was reached at least two days prior to his discovery that
18 Plaintiff had previously filed a Jones Act claim against another shipping line. Bertrand Decl. ¶
19 10, Exh. 5. Plaintiff's "wrongful termination/retaliation" claim is analyzed in greater detail *infra*.

20 II. DEFENDANTS APL MARINE SERVICES LTD. AND M/V APL SINGAPORE
21    a. "Harassment" and "Embarrassment" Claims

22 Plaintiff's Complaint (at p.2:17-20) first alleges that Captain Bertrand "unreasonably
23 harassed" and "embarrassed" him on board the vessel. Plaintiff has testified that the Captain's
24 alleged harassing conduct was limited to: (1) giving Plaintiff two letters of warning based on
25 allegedly fictitious reasons; (2) logging Plaintiff's discharge also based on allegedly fictitious
26 reasons; (3) telling Plaintiff at the beginning of the voyage to stand and learn the bridge equipment

**ORDER ON MOTIONS FOR SUMM JMT**

rather than sit in the conning chair during his watch; (4) telling Plaintiff to program information into the NAVTEQ (a piece of bridge equipment), which Plaintiff felt under the union contract was the Second Mate's responsibility; and (5) asking Plaintiff to follow a certain procedure at night to complete a D-102 (pre-watch relief) form, which procedure required Plaintiff to repeatedly go back and forth between the bridge and an adjacent chart room to complete the form. (Powell Depo. 182:12-184:25.) The acts that allegedly caused Plaintiff embarrassment were the written warnings and discharge, and that the Captain would talk to him in a condescending tone of voice as if Plaintiff did not know his job. (Powell Depo. 188:17-192:10.)

The Jones Act expressly incorporates all portions of the Federal Employees Liability Act ("FELA"), whose case law is also generally applicable to Jones Act claims. Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990).

The Jones Act does not create a claim for harassment (sexual or otherwise) *per se*; like FELA, the Jones Act does not create substantive new torts, but rather protects seamen from common law torts. However, certain harassing conduct may be actionable under the Jones Act if a plaintiff can establish a claim for negligent infliction of emotional distress ("NIED") or possibly intentional infliction of emotional distress ("IIED"). The Court finds, however, that none of the alleged harassment or embarrassment claimed by Plaintiff is actionable under either emotional distress theory.

In this case, Plaintiff does not claim that he suffered any physical injury aboard the *APL Singapore* as a result of any of the conduct complained of in the Complaint. Instead, Plaintiff claims the Captain's criticisms and disciplinary actions caused Plaintiff to question his judgment and worth, and Plaintiff found it embarrassing to have to go back to the union hall after his discharge and explain that he had been discharged. (Powell Depo. 188:17-193:25.) Plaintiff's "embarrassment" in turn, caused him no real physical harm. Instead, after he received his warning letters, Plaintiff temporarily experienced a reduced appetite (where he was still eating, but just not as much). (Powell Depo. 195:13-196:3.)

**ORDER ON MOTIONS FOR SUMM JMT**

Under both the Jones Act and FELA, federal courts have developed three different threshold tests as to when, if at all, emotional injury without accompanying physical harm could be compensable. They are: (1) the "physical impact" test, which provides a plaintiff may recover for emotional harm only if he suffers an accompanying physical injury or impact; (2) the "zone of danger" test which provides a plaintiff can recover for emotional distress, even though there is no physical contact, so long as the plaintiff witnesses peril or harm to another and is also himself threatened with imminent physical harm; and (3) the "bystander proximity" test which provides that, even if outside the "zone of danger," recovery may be had if the plaintiff was physically near the scene of an accident, personally observed the accident, and was related to the victim. See Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 546-549 (1994) and Chan v. Society Expeditions, 39 F.3d 1398, 1409 (9th Cir. 1994) describing these three tests.

In Consolidated Rail Corp. v. Gottshall, *supra,* the U.S. Supreme Court held in an FELA case that the "zone of danger" test was the proper standard for evaluating recovery for NIED. 512 U.S. at 554-556. The "zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct. ... [T]hose within the zone of danger of physical impact can recover for fright, and those outside of it cannot." Id. at 547-548.

Since Gottshall, numerous courts have applied the "zone of danger" standard to NIED claims brought under the Jones Act, although the Ninth Circuit has not to date adopted a specific threshold standard. For purposes of this ruling, the test does not matter: Plaintiff cannot meet either Gottshall's "zone of danger" test or the two other threshold "physical impact" or "bystander proximity" tests.

Here, Plaintiff does not claim that he was ever placed in immediate risk of any actual physical harm by Defendant Bertrand's conduct or any other condition aboard the vessel. (Powell Depo. 198:21-199:5; 224:14-225:19; 228:6-229:3; 232:7-10; 237:8-20; 241:11-242:16.) Likewise, having suffered no physical impact or physical injury, he cannot meet the more restrictive

**ORDER ON MOTIONS FOR SUMM JMT**

"physical injury" test. Finally, because there never was any accident, he also cannot meet the "bystander" test. Accordingly, Defendants are entitled to summary judgment on any NIED claim brought by Plaintiff under the Jones Act. See, e.g., Yballa v. Sea-Land Servs., Inc., 919 F.Supp. 1428, 1434-1436 (D.Haw. 1995) (plaintiff's claims that he was ordered to work excessive overtime or be fired, that his supervisors fabricated reasons to reprimand him, and also repeatedly yelled obscenities at him, did not "raise a genuine issue of recovery" under any of the three common-law tests). As the Supreme Court stated in Gottshall, emotional distress arising out of a "work-stress-related claim plainly does not fall within the common law's conception of the zone of danger." 512 US at 558.

Plaintiff also fails to make out a triable IIED claim. Preliminarily, neither the U.S. Supreme Court nor the Ninth Circuit has clearly ruled on whether an IIED claim is cognizable under the Jones Act. Gottshall, *supra*, 512 U.S. at 541 n.2; Yballa, *supra*, 919 F.Supp. at 1436-1437. However, even assuming *arguendo* that an IIED claim can be brought under the Jones Act, the Court finds that Plaintiff has not established the requisite elements of that claim: a showing of "extreme or outrageous conduct" and proof of "severe emotional distress," without which any IIED claim must fail. Orin v. Barclay, 272 F.3d 1207, 1208 (9th Cir. 2001).

To be actionable, conduct must be so outrageous in character, and so extreme in degree, as "to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community... The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. ...." Restatement (Second) of Torts Section 46(1), "Comment (d)."

As noted above, the alleged harassing conduct which Plaintiff claims embarrassed him consisted of (1) receiving two letters of warning based on allegedly fabricated facts; (2) being discharged without justification; (3) being asked to stand and learn the bridge equipment rather than sit down during his watch; (4) being asked to perform a duty that was allegedly the Second Mate's responsibility under the union contract, and (5) being told to follow a certain procedure to

complete the D-102 form. As a matter of law, none of these acts rises to "extreme and outrageous conduct." See, e.g., Yballa v. Sea-Land Services, *supra*, 919 F.Supp 1437-1438; Barclay v. Keystone Shipping Co., 128 F.Supp. 237, 239-42, 244-45 (E.D. Pa 2001).[2]

Likewise, Plaintiff cannot establish that he suffered "severe" or "extreme" emotional distress. Restatement (Second) of Torts, Section 46(1) "Comment (j)" ("It is only where [emotional distress] is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.").

As noted above, Plaintiff attributed his only emotional upset to the fact that Defendant Bertrand's criticisms and disciplinary actions caused him to start to question his own judgment and worth, and that he found it embarrassing to have to go back to the union hall and explain he had been discharged. Again, Plaintiff's only symptom of any emotional upset was having a somewhat reduced appetite for a couple of days after receiving the two written warnings. This does not constitute "severe" or "extreme" emotional distress. Su v. M/V Southern Aster, 978 F.2d 462, 474 (9th Cir. 1992). Defendants are entitled to summary judgment on Plaintiff's claims of "embarrassment" and "harassment."

### b. "Unseaworthiness" Claim

Plaintiff's complaint also brings a general maritime law claim for "unseaworthiness" (Complaint, p.2:21-23). Under the doctrine of unseaworthiness, a ship's owner has an absolute duty to furnish a vessel and appurtenances reasonably fit for their intended use. See Mitchell, *supra*, 362 U.S. at 550. An employee who suffers a personal injury as a result of a vessel's unseaworthiness may recover damages for that injury.

---

[2] Plaintiff submits a declaration from one of his shipmates detailing that seaman's experience of Captain Bertrand screaming, ranting and raving. Sylstra Decl. ¶ 12. But Plaintiff doesn't report being either the recipient or witness of that level of verbal abuse (and it is questionable whether such conduct, on board a ship at sea, would constitute "extreme and outrageous conduct" in any event).

**ORDER ON MOTIONS FOR SUMM JMT**

To present a successful claim for unseaworthiness a plaintiff must show, among other things, that the alleged unseaworthy condition was the direct and proximate cause of an injury to him. Ribitzki v. Canmar Reading & Bates, Ltd. Partnership, 111 F.3d 658, 664 (9th Cir. 1997); Johnson v. Offshore Express Co., 845 F.2d 1347, 1354 (5th Cir. 1988); Perkins v. American Elec. Power Fuel Supply, Inc., 246 F.3d 593, 602 (6th Cir. 2001).

Plaintiff's Complaint alleges the *APL Singapore* was "unseaworthy" due to a defective magnetic compass, and while not alleged in the Complaint, Plaintiff also testified the vessel was allegedly "unseaworthy" because the windshield wipers, washers and heaters were not working, and because the ship's gyros were cross-wired. (Powell Depo 213:14-20; 216:6-217:25.)[3]

The Court need not reach the issue of whether these alleged equipment problems caused the ship to be unseaworthy, in so much as Plaintiff has admitted both that none of these alleged equipment issues (1) resulted in any actual or imminent accident (e.g., never caused the vessel to strike or come even close to striking any other object) nor even any loss of navigational control (Powell Depo. 218:22-220:2, 221:7-222:1 (the magnetic compass); 227:8-228:5 (the windshield wipers, washers and heaters); 229:4-232:23 (the gyros)); or (2) caused him to suffer personal injury (e.g., these alleged equipment issues never caused him to fall, or to strike or be struck by any part of the vessel, its cargo or appurtenances). (Powell Depo. 228:14-229:3 (the magnetic compass); 228:6-13 (the windshield wipers, washers and heaters); 232:7-10 (the gyros).)

Plaintiff's claim for unseaworthiness fails as a matter of law because he has not shown (and apparently cannot show) any injury proximately caused by the alleged defects. The Floridian, 88 F.2d 289, 290 (9th Cir. 1937) (where no injuries were sustained as a result of any unseaworthy condition, "[w]hether the vessel was or was not unseaworthy is, therefore,

---

[3] Plaintiff also claims for the first time in his responsive pleading that Defendant Bertrand's <u>conduct</u> rendered the vessel unseaworthy. Pltf. Response, p. 4. Not only is it inappropriate to raise a new claim in opposition to a summary judgment motion (see Pickern v. Pier 1 Imports (U.S.), 457 F3d 963, 968-69 (9th Cir. 2006)), but Plaintiff's primary support for the argument is an unsworn declaration replete with Plaintiff's opinions concerning Defendant Bertrand's competence. This portion of Plaintiff's argument is improper and has been disregarded by the Court.

**ORDER ON MOTIONS FOR SUMM JMT**

immaterial"). Summary judgment will be granted for Defendants on the "unseaworthiness" claim.

      c. "Wrongful Termination" Claim

Plaintiff's Complaint also alleges he was wrongfully discharged (Complaint, p.2:25-3:9.) While the Complaint does not allege how his discharge was "wrongful," Plaintiff has testified that (while it is "supposition" and simply a "guess or speculation" on his part) he believes he may have been fired because he earlier brought a maritime personal injury lawsuit against a different employer. (See pp. 3-4, 6, *supra;* Powell Depo. 163:19-171:18.)

Under maritime law, absent a contractual provision, a seaman is an "at-will" employee whose employment is "terminable at will by either party." Atlas, *supra,* 653 F.2d at 1060. An employer can discharge an "at-will" employee "for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong." Id.

A non-contractual exception to the general "at-will" doctrine, however, has been found under maritime law for a "retaliatory" wrongful discharge where an employer is alleged to have discharged a seaman in retaliation for bringing a personal injury suit under the Jones Act. Id. at 1063-64. To prevail on a maritime tort claim for "retaliatory" wrongful discharge for bringing a Jones Act claim, "a seaman must affirmatively establish that the employer's decision was motivated in substantial part by the knowledge that the seaman either intends to file, or has already filed, a personal injury action against the employer." Id. at 1063. As with any retaliatory discharge claim, a seaman claiming he was discharged in retaliation for bringing an earlier Jones Act personal injury claim must first establish a *prima facie* case of retaliation by showing that (1) he engaged in statutorily protected activity; (2) he experienced an adverse employment action following the protected activity; and (3) a causal link exists between protected activity and the adverse employment action. Richards v. Seariver Maritime Financial Holdings, Inc., 59 F.Supp.2d 616, 636-638 (S.D.Tex. 998). Plaintiff has failed to establish the requisite causal link or connection to make out a *prima facie* case.

The evidence before the Court shows that Captain Bertrand first learned of Plaintiff's prior injury and legal action on the morning of October 30, 2007. It is also undisputed that Captain Bertrand decided to discharge Plaintiff on the evening of October 27, 2007 (Bertrand Depo. 69:23-71:7, 96:12-23, 104:1-9), and both informed APL of his decision and obtained its concurrence on October 28, 2007 – days before he first learned of the Plaintiff's earlier shipboard injury claim. (Bertrand Decl. ¶¶ 7-9, Exhs. 3-4.)

Where the decision to take an adverse action occurs before any knowledge of the protected activity, there can be no causal connection even though the actual termination does not occur until later. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001); accord, Miller v. Fairchild Indus., Inc. 797 F.2d 727, 731 n.1 (9th Cir. 1986) (recognizing that in Cohen v. Fred Meyer, 686 F.2d at 797 (9th Cir. 1982) the Ninth Circuit had "reached the obvious conclusion that an employer who had already decided upon a course of action adverse to the plaintiff prior to learning of the plaintiff's protected activity did not intend to retaliate").

The only other alleged "retaliatory" motivation identified and claimed by Plaintiff as having also possibly motivated Captain Bertrand's decision to discharge him is Plaintiff's belief that he may have been terminated in retaliation for his prior affiliation with the Sailors Union of the Pacific (the "SUP"), which is another union representing non-licensed crewmembers. (Powell Depo. 176:19-180:7, 181:2-181:17.)

Nothing in general maritime law regulates a discharge for union affiliation, which is instead governed by the National Labor Relations Act (NLRA), 29 U.S.C. § 151, *et seq.* See, e.g., N.L.R.B. v. Waterman S.S. Corp., 309 U.S. 206, 218-19 (1940). The National Labor Relations Board ("NLRB") has primary and exclusive jurisdiction over conduct that is arguably a violation of Section 8 of the NLRA. San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245 (1959). Since Plaintiff's claim that his discharge may have been in retaliation for his prior SUP union affiliation does not raise any right provided by general maritime law, but instead falls within the exclusive jurisdiction of the NLRB, it also raises no triable issue before this Court.

1    If the Court has made little mention of Plaintiff's counterarguments to the foregoing legal analyses, it is only because Plaintiff provided none. To call his answering brief to Defendants' motions "non-responsive" would be an understatement. Nowhere in his responsive briefing does Plaintiff address any of Defendants' arguments. His citations concerning summary judgment standards are from Washington state law cases when it is federal civil procedure and precedent which govern dispositive motions in this court. Despite the fact that federal procedural law restricts this Court to consideration of admissible evidence (FRCP 56(e)), such declarations as Plaintiff has submitted are neither sworn nor subscribed under penalty of perjury, lack an adequate showing of having been made on the personal knowledge of the declarant and/or attach unauthenticated documents.[4] Where Plaintiff's evidence has failed to meet the minimum standards of federal procedural law, it has been disregarded. The Court declines to list all the inadmissible evidence submitted by Plaintiff for the simple fact that, even if all of his evidence had been considered, it still would not be enough to create a triable issue or to defeat summary judgment.

III.   PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff seeks through his response to bring a "cross motion for summary judgment… due to harassment." Pltf. Response, p. 2. The request is both procedurally and substantively flawed. Procedurally, it is untimely – the Case Scheduling Order on file in this matter clearly states that all dispositive motions must be filed by October 19, 2009. Dkt. No. 25. Plaintiff's cross-motion was filed on November 4, 2009, with no accompanying request for a waiver of the dispositive motions deadline.

Even had the cross-motion been timely filed, it is non-meritorious. The case law cited in support of Plaintiff's harassment claim is addressed to violations of the Washington Law Against

---

[4] Additionally the "Evidence Relied On" section of Plaintiff's response lists a number of documents which are either attached and incomplete (the "sworn statement of Alain Frouton") or simply not attached ("excerpt from the transcript of Stephen L. Bertrand's September 25th, 2009 Deposition," "[s]worn statement of Charlie Duke" and "[d]epositions of Michael Powell and Stephen L. Bertrand"). Pltf. Response, p. 3.

**ORDER ON MOTIONS FOR SUMM JMT**

Discrimination (WLAD) related to sexual or racial harassment (<u>Kahn v. Salerno</u>, 90 Wn.App. 110 (1998)), Title VII of the Civil Rights Act concerning sexual or racial harassment (<u>Dyer v. TW Services, Inc.</u>, 973 F.Supp. 981 (W.D.Wa 1997)), or both (<u>Keenan v. Allan</u>, 889 F.Supp. 1320 (E.D.Wa 1995)). Nowhere in Plaintiff's Complaint is there an allegation of a violation of WLAD or Title VII; nowhere in his deposition testimony or his declaration does he claim harassment based on his sex, race or any other constitutionally-protected category.

Plaintiff's cross-motion for summary judgment is denied.

**Conclusion**

All Defendants are entitled to summary judgment on all claims based on the Court's finding that, as a matter of law, Plaintiff has failed to establishment "harassment" in the form of any legally-cognizable emotional distress, has failed to establish a claim of "unseaworthiness" based on the lack of any proximately-caused injury therefrom, and has failed to establish "wrongful termination" in the form of demonstrable evidence of retaliation. Additionally, Defendant Bertrand is entitled to summary judgment on all Jones Act claims because he is not Plaintiff's "employer" as that term in applicable to the Jones Act. Defendants are granted summary judgment on all claims and this matter is DISMISSED with prejudice as to all of them.

Plaintiff's cross-motion for summary judgment is procedurally and substantively deficient and will be DENIED.

The clerk is directed to provide copies of this order to all counsel of record.

Dated: December _1_, 2009

Marsha J. Pechman
United States District Judge